# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DCK/TTEC, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 14-1739 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| MICHAEL W. POSTEL, SR., POSTEL INDUSTRIES, INC., *a Texas corporation*, POSTEL HOLDINGS, LLC, *a Texas limited liability company*, POSTEL BUILDING SYSTEMS, LLC, *a Texas limited liability company*, POSTEL ERECTION GROUP, L.L.C., *a Nevada limited liability company*, POSTEL INTERNATIONAL, L.L.C., *a Louisiana limited liability company*, POSTEL INTERNATIONAL, INC., *a Nevada corporation*, POSTEL-WEST, INC., *an Arizona corporation*, POLK COUNTY EQUIPMENT, INC., *a Texas corporation,* AMERISTEEL INTERNATIONAL, INC., *a Texas corporation*, AMERISTEEL MANUFACTURING, INC., *a Texas Corporation*, POSTEL HOLDINGS II, L.L.C., *a Texas limited liability company*, POSTEL-MCALLEN, L.L.C., *a Texas limited liability company*, POSTEL HOLDINGS III, L.L.C., *a Texas limited liability company*, ADAMS STREET HOLDINGS, L.L.C., *a Texas limited liability company*, POSTEL ADAMS, L.L.C., *a Texas limited liability company*, POSTEL-RB MANAGEMENT, L.L.C., *a Texas limited liability company*, POSTEL GROUP, INC., *an Anguilla Corporation*, POSTEL STEEL VENTURES, L.L.C., *a Texas limited liability company*, INNERSTAFF, INC., *a Texas corporation*, POSTEL HOLDINGS, IV, L.L.C., *a Texas limited liability company*, and DOES 1 THROUGH 10, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

# MEMORANDUM ORDER

## I. MEMORANDUM

For the reasons that follow, Defendants' Motion to Dismiss or, Alternatively, Transfer Venue (**Doc. 32**) will be denied.

## BACKGROUND

On October 31, 2013, following a trial, this Court entered a judgment of $2,378,563.00 for dck/Ttec, LLC ("Plaintiff") and against Postel Industries, Inc. ("Defendant Industries" or "Industries") in Civil Action Number 11-1198. On December 23, 2014, Plaintiff filed a twelve-count Complaint initiating the instant action. The Complaint alleges that, in anticipation of a judgment against them in Civil Action. No. 11-1198, Defendants fraudulently rearranged assets in order to prevent any later payment to Plaintiff. Compl. (Doc. 1). Specifically, Plaintiff alleges that Defendants engaged in fraudulent cash, security, debt and asset transfers; the corporate veil should be pierced; certain Defendants are the alter ego of Defendant Mike Postel and Defendant Industries; and that successor liability is implicated in this case. Compl. at ¶¶ 107-267.

On March 12, 2015, all named Defendants[1] filed a Motion to Dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) or, alternatively to transfer venue to the Southern District of Texas. Def.'s Mot. (Doc. 32). For the reasons that follow, both motions will be denied.

---

[1] The Motion to Dismiss was not filed on behalf of "Does 1 through 10."

## ANALYSIS

### Motion to Dismiss

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, "[P]laintiff must 'prov[e] by affidavits or other competent evidence that jurisdiction is proper.'" Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009) (quoting Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996)). A plaintiff, however, need only establish "a prima facie case of personal jurisdiction," and is entitled to have the allegations set forth in the complaint taken as true and all factual disputes drawn in his or her favor. Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004). The complaint must nevertheless contain "specific facts" rather than vague or conclusory assertions. Marten v. Godwin, 499 F.3d 290, 298 (3d Cir. 2007).

Pennsylvania's long-arm statute provides for jurisdiction "to the fullest extent" permitted under the Due Process Clause of the Fourteenth Amendment. 42 Pa. Cons. Stat. § 5322(b). The due process clause requires: (1) that Defendants here have "minimum contacts" with the forum state; and (2) that the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). "Minimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Remick, 238 F.3d at 255 (quoting Asahi Metal Indus. Co., Ltd. v. Superior Court of California, 480 U.S. 102, 109 (1987)).

Personal jurisdiction may be invoked over a non-resident defendant on the basis of either general or specific jurisdiction. Plaintiff concedes that the theory of general jurisdiction is inapplicable to the instant case, and argues only for a finding of specific personal jurisdiction.

Pl.'s Br. in Opp'n at 8.  When a plaintiff's complaint alleges intentionally tortious conduct, as is the case here, the "effects test" established in Calder v. Jones, 465 U.S. 783 (1984), can be used to "enhance otherwise insufficient contact with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied."  IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 260 (3d Cir. 1998).  Under this test, a plaintiff can demonstrate personal jurisdiction if it shows "(1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and] (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity."  Marten, 499 F.3d at 297.  "[I]n order to make out the third prong of this test, the plaintiff must show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum."  IMO Industries, Inc. v. Kiekert AG, 155 F.3d 254 (3d Cir. 1998).

In the instant case, Plaintiff contends that the Court has personal jurisdiction over the parties involved as they all participated in an intentionally tortious scheme to transfer or hide assets in order to thwart an imminent Pennsylvania judgment in favor of a Pennsylvania plaintiff. Defendants assert that there are insufficient minimum contacts to establish specific personal jurisdiction because: 1) the various Postel entities did not "direct any activities towards Pennsylvania"; 2) Plaintiff's claims do not arise from or relate to Defendants' contact with Pennsylvania; and 3) Plaintiff is not authorized to do business in Pennsylvania and thus "[a]n

4

injury can not occur to a fictitious entity in a jurisdiction that [*sic*] the entity has no authority to conduct business."[2] Def.'s Br. in Support at ¶ 14.

A. Transferors and Transferees

Plaintiff alleges that the Calder test is satisfied with respect to the alleged fraudulent transferors (together, the "Transferors") – Michael Postel ("Mr. Postel") and Defendant Industries (the judgment debtor) – as well as the alleged fraudulent transferees. Pl.'s Br. in Opp'n at 13, n. 7. The alleged transferees (collectively, the "Transferees") are: Postel Holdings, LLC ("Holdings"), Postel Erection Group, L.L.C. ("Erection Group"), Postel International, L.L.C. ("International, LLC"), Postel International, Inc. ("International, Inc."), Postel-West, Inc. ("West"), Polk County Equipment, Inc. ("Polk"), Ameristeel Manufacturing, Inc. ("Ameristeel Manufacturing"), Postel-McAllen, L.L.C. ("McAllen"), Adams Street Holdings, L.L.C. ("Adams

---

[2] The first two of Defendants' arguments do relate to a general standard regarding personal jurisdiction, although, as explained below, Plaintiff's arguments are ultimately persuasive on this issue.

Defendants' third argument, that *Plaintiff* cannot be injured in this forum without a proper license to conduct business in the state, is a red herring that will not be treated in depth by the Court. Assuming *arguendo* that Plaintiff lacked standing to bring this action in this forum for lack of proper registration, Plaintiff may be granted safe harbor by registering to do business now. See Empire Excavating Co. v. Maret Development Corp., 370 F.Supp. 824, 827 (W.D. Pa. 1974) (holding that the statute allows for the safe harbor of registering to do business after the inception of an action). Plaintiff has registered to do business in the Commonwealth, however it was unable to do so under its official corporate name. Registration under a different name, with cause, suffices to establish standing. 15 Pa.C.S. § 8582(a)(1). Plaintiff has alleged that *Defendant* has registered to do business in the Commonwealth of Pennsylvania in Plaintiff's name in an effort to prevent Plaintiff from doing so itself. While ultimately it is of no importance to the Court, as Plaintiff is now registered to do business in the Commonwealth, the Court is concerned by Plaintiff's allegation that counsel for Defendants is attempting to prevent Plaintiff from properly registering. If true, this strikes the Court as an unethical and impermissible litigation tactic, which the Court cannot condone. The Court assumes that discovery will establish whether Defendants or their counsel engaged in sanctionable conduct in this case.

Street"), and Postel-RB Management, L.L.C. ("RB"). Id. Plaintiff pleads with great specificity the facts that buttress this argument. See Compl. ¶¶ 84-103; Marten v. Godwin, 499 F.3d at 298.

The Court finds that there is prima facie *in personam* jurisdiction over the alleged Transferors[3] and Transferees. Mr. Postel is the former owner and current President of Defendant Industries. Compl. at ¶ 115. In May of 2013, while Defendant Industries' Motion for Summary Judgment was pending in Civil Action No. 11-1198, Industries allegedly transferred a total of $4,929,000.00 to Holdings "without receiving reasonably equivalent value in exchange." Compl. at ¶ 110; see also id. at ¶¶ 84-88. Mr. Postel is the former owner and current President of Holdings; he is the sole member of Holdings. Id. at 114. Plaintiff alleges that Industries was insolvent at the time of the above transfers; the transfers were made under the direction and control of Mr. Postel; and Mr. Postel maintained use and control over the nearly five million dollars after its transfer to Holdings. Id. at ¶ 112.

Plaintiff alleges that Industries made additional transfers to Holdings in October and November of 2013, in an amount totaling approximately $400,000. Compl. at ¶ 101, 133-37. These transfers occurred immediately prior to, during, and immediately following the jury trial in Civil Action No. 11-1198 in which Defendant Industries was found liable in the amount of nearly $2.4 million. Compl. at ¶¶ 98-103. It is also alleged that Industries made security interest transfers directly to Holdings in May of 2013. Id. at ¶¶ 121. Plaintiff alleges that these transfers were made for the benefit of Mr. Postel – as he maintained use and control of the funds both before and after the transfers – with the intent to defraud Industries' creditors, including Plaintiff. Id. at ¶ 113, 116, 140-44.

---

[3] The Court notes that Defendant Industries has previously been haled into this forum, in the underlying civil litigation at Civil Action No. 11-1198. Industries did not assert a lack of personal jurisdiction in that matter.

Defendant Industries further is accused of making cash transfers to RB and International, Inc. Compl. at ¶¶ 164, 186-86. It is alleged that Mr. Postel is the former owner of RB; he receives a salary from RB but performs no work for that entity; and he has use and control over funds in the RB name. Id. at ¶ 162-63, 167. Plaintiff alleges that Holdings – and thus Mr. Postel – owned 100 percent of International, Inc. at the time of the cash transfers from Industries to International, Inc. Id. at ¶ 187. It is alleged that Mr. Postel is the former owner and current President and sole Director of International, Inc. Id. at ¶ 189.

It is further alleged that Mr. Postel and Industries executed an elaborate debt transfer scheme involving multi-million dollar loans from two banks, alleviating the debt of Erection Group, International, LLC, West and Polk and exacerbating the liability of Industries, in anticipation of owing a judgment to Plaintiff. Id. at ¶¶ 146-57. Mr. Postel is the former owner and current President of Erection Group, International, LLC, West and Polk, the entities that benefitted from the debt transfer. Id. at ¶ 156. Plaintiff alleges that "Industries pledged its assets as security for the [second loan] for the benefit of Erection Group, International LLC, West, and Polk County, with actual intent to hinder, delay or defraud its creditors, including dck." Id. at ¶ 151.

Defendant Industries and Mr. Postel are additionally accused of transferring inventory and equipment to International, Inc., McAllen, Adams Street, and Ameristeel Manufacturing, at times when Industries was insolvent and without receiving reasonably equivalent value in exchange. Id. at ¶¶ 170-181, 195-227. It is alleged that Mr. Postel maintained use and control over the inventory and equipment transferred to these entities after the transfers, and that the transfers were made with the intent to defraud Defendant Industries' creditors, including dck. Id. Mr. Postel is the former owner and current President and sole Director of International, Inc. Id.

at ¶ 176. He owns 100 percent of Ameristeel Manufacturing, which, according to public records, is the sole Director of McAllen. Id. at 199. Mr. Postel is the sole member of Holdings II, L.L.C. ("Holdings II"), which is the sole member of Adams Street. Id. at ¶ 210.

Here, the allegations indicate that 1) the Transferors and Transferees engaged in the intentional tort of fraudulent transfer of assets; 2) for the purpose of preventing the Plaintiff, a Pennsylvania creditor, from collecting on a judgment ultimately rendered in its favor by a court in Pennsylvania; 3) and thus "expressly aimed" their conduct at the forum. See Gambone v. Lite Rock Drywall, 288 Fed.Appx. 9 (3d Cir. 2008) (finding that an alleged fraudulent transferee was subject to the personal jurisdiction of a court under Marten's iteration of the effects test); Marten, 499 F.3d at 297. Plaintiff felt the brunt of the harm in this forum such that the forum can be said to be the focal point of the harm suffered by Plaintiff as a result of the fraud, in that Plaintiff does business in Pennsylvania. Moreover, Defendants Transferors' and Transferees' alleged tortious conduct thwarted a judgment awarded to Plaintiff in the Western District of Pennsylvania. Id. Plaintiff has shown that Defendants Transferees and Transferors knew Plaintiff would suffer the brunt of the harm in Pennsylvania, as Civil Action No. 11-1198 was commenced by Plaintiff, in this Court, prior to any of the relevant transfers. See IMO Industries, 155 F.3d 254. By virtue of the existence of the initial action, Defendants Transferees and Transferors were aware that a Pennsylvania judgment against them was a real and imminent possibility.

While it often may be difficult to establish that the intent of a *transferee* was to defraud a creditor of a transferor, that cannot be said to be the case here. It is alleged that Mr. Postel maintained use and control of the assets of the Transferees as well as Industries in the present case. His alleged intent on the Transferor side – to defraud creditors, Plaintiff included – may be presumed to exist on the Transferee side as well. In light of these facts, Plaintiff has established

8

that the "effects test" is satisfied, and thus Defendants Transferors and Transferees have sufficient minimum contacts with this forum. A finding of personal jurisdiction in this case would most certainly comport with traditional notions of fair play and substantial justice. Indeed, it would violate traditional notions of fair play and substantial justice if the Court found that one may incorporate entities outside of the forum, transfer assets to those entities, maintain use and control over those assets, and claim insolvency of the transferor and lack of personal jurisdiction over the transferees on judgment day. Thus, the Court has personal jurisdiction over Mr. Postel, Defendant Industries, Holdings, Erection Group, International, LLC, International, Inc., West, Polk, Ameristeel Manufacturing, McAllen, Adams Street, and RB; Defendants' Motion to Dismiss for lack of personal jurisdiction will be denied with respect the Transferors and Transferees.

### B. Alter Egos

Plaintiff further argues that personal jurisdiction exists over the remaining defendants, all of whom are allegedly either successors or alter egos of Industries and/or Mr. Postel.[4] Those defendants (collectively, the "Remaining Defendants") are: Postel Building Systems, LLC ("Building Systems"), Ameristeel International, Inc. ("Ameristeel International"), Postel Holdings II, LLC ("Holdings II"), Postel Holdings III, LLC ("Holdings III"), Postel Adams, LLC ("Postel Adams"), Postel Group, Inc. ("Postel Group"), Postel Steel Ventures, LLC ("Postel Steel"), Innerstaff, Inc. ("Innerstaff"), and Postel Holdings IV, LLC ("Postel IV"). Compl. at p. 13, n. 7.

---

[4] Plaintiff alleges that certain Defendants are both transferors/transferees *and* alter egos or successors of Industries or Mr. Postel. As the Court has already established the existence of personal jurisdiction over all Transferors and Transferees, here we consider only the entities that are alleged to be alter egos/successors and *not* transferors or transferees.

"Where an individual or a corporation has insufficient contacts with the forum state to satisfy due process, a court may nonetheless exercise personal jurisdiction if the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction before that court." Davlyn Mfg. Co. v. H&M Auto Parts, Inc., 414 F.Supp.2d 523, 531 (E.D. Pa. 2005) (citing Minn. Mining & Mfg. Co. v. Eco Chem, 757 F.2d 1256, 1265 (Fed. Cir. 1985)). Plaintiff alleges that the Remaining Defendants are alter egos or successors of Industries or Mr. Postel, over whom the Court has personal jurisdiction. See supra. The alter ego and successor doctrines overlap considerably – both "look to whether the later-formed entity is a mere continuation of its predecessor, as well as whether there are any indicia of fraud, illegality, or injustice." Davlyn, 414 F. Supp. 2d at 532. One entity may be considered to be the alter ego of another if it can be said that "the independence of the separate corporate entities was disregarded." Fisher v. Teva PFC SRL, 212 Fed. Appx. 72, 76 (3d Cir. 2006). Also relevant to the general determination of whether one entity is the alter-ego of another are the following factors:

> gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder.

Pearson v. Component Tech. Corp., 247 F.3d 471, 484–85 (3d Cir. 2001).

Plaintiff alleges that each of the Remaining Defendants operates under Mr. Postel's ownership and/or control, but that he has consolidated most of that control in the four "Holdings" companies:

> Mike Postel is the former owner of Defendants Industries, International INC, Erection Group, Building Systems, West, Polk County, Innerstaff, and Ameristeel International. On information and belief, Mike Postel is the former owner of Adams Street . . . and Postel-McAllen. Mike Postel has transferred his direct

>ownership interest in each of these companies to Holdings, Holdings II, Holdings
>III and/or Holdings IV.

Compl. at ¶ 230. Plaintiff further alleges that no consideration was paid in exchange for these transfers, and that "[a]t all times pertinent to this Complaint, Mike Postel has owned (and currently owns) 100 percent of Holdings, Holdings II, Holdings III, Holdings IV, . . . Steel Ventures, Postel Adams and Postel Group." Id. at ¶ 232. Thus, it is alleged that Mr. Postel currently owns six of the nine alleged alter egos, and that three entities – Building Sytems, Innerstaff and Ameristeel International – are subsidiaries of one of the Holdings companies, the entities directly owned by Mr. Postel. Id. at ¶¶ 228–52.[5] It is further alleged that Mr. Postel serves as the President, Manager and/or Director, and directly controls day-to-day operations and makes all material decisions on behalf of each of these nine entities. Id. at ¶ 236. "There is no separation between Mike Postel and each of the [Remaining Defendants]. Mike Postel has complete control over each of these entities such that [they] have no separate mind, will, or existence of their own independent from Mike Postel." Id. at ¶ 237. The Remaining Defendants all operate in connection with steel fabrication and/or erection. Id. at ¶ 238.

Notably, many of the Remaining Defendants operate from common facilities. Industries, Holdings, Holdings II, Holdings III, Holdings IV, Building Systems, Innerstaff, and Ameristeel International, among others, all utilize 11210 Steeplecrest Drive, Suite 260 in Houston, Texas as their office address. Id. at ¶ 239. Plaintiff alleges that Emily Swain, an employee of RB, serves as CFO for Holdings and its four subsidiaries. Id. at ¶ 240. Plaintiff alleges that the Remaining Defendants share other "management-level employees," and that they file consolidated tax returns. Id. at ¶ 241-42. Plaintiff alleges that assets, money and employees are frequently

---

[5] Plaintiff alleges that Innerstaff and Ameristeel International are owned by Holdings III, but does not specify which Holdings company owns Building Systems. See Compl. at Ex. A.

transferred back and forth between various of the Remaining Defendants – and some of the Transferors/Transferees – often without proper documentation and at the whim of Mr. Postel. Id. at 243.

Plaintiff has alleged sufficient facts for the Court to find that the Remaining Defendants all constitute "mere continuations" of Industries and/or Mr. Postel himself. Assuming Plaintiff's well-pleaded facts to be true, the Remaining Defendants are neither independent from one another, nor independent from Mr. Postel. This complex web of companies appears to be a mere corporate façade behind which Mr. Postel intended to hide assets and play games with the laws of incorporation (and the judgment of this Court). Assuming the truth of these allegations (as we must at this stage), he transfers assets on a whim, for his benefit and in order to defraud creditors. The Remaining Defendants are the epitome of the "alter ego," and as such, they are subject to the personal jurisdiction of this Court. Defendants' Motion to Dismiss for lack of personal jurisdiction will be denied.

**Motion to Dismiss for *Forum Non Conveniens*, or Transfer under 28 U.S.C. § 1404**

In the alternative, Defendants move the Court to dismiss or transfer this case pursuant to "28 U.S.C. § 1404 based upon *forum non conveniens*." Def.'s Br. in Support at ¶ 18. While Defendants conflate the two, the Court notes that a motion to dismiss for *forum non conveniens* is distinct from a motion to transfer venue under 18 U.S.C. § 1404; the Court assumes that Defendant is asking for dismissal or, in the alternative, a transfer of venue.

## A. *Forum Non Conveniens*

Courts rarely second-guess a plaintiff's choice of forum. Kisano Trade & Invest Ltd. v. Lemster, 737 F.3d 869, 873 (3d Cir. 2013). Nonetheless, "[w]hen an alternative forum has jurisdiction to hear the case, and when trial in the plaintiff's chosen forum would 'establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems,' the court may, in the exercise of its sound discretion, dismiss the case." Windt v. Qwest Commc'ns Int'l, Inc., 529 F.3d 183, 189 (3d Cir. 2008). Four factors guide a District Court's exercise of discretion in this context:

> (1) the amount of deference to be afforded to plaintiffs' choice of forum; (2) the availability of an adequate alternative forum where defendants are amenable to process and plaintiffs' claims are cognizable; (3) relevant "private interest" factors affecting the convenience of the litigants; and (4) relevant "public interest" factors affecting the convenience of the forum.

Kisano, 737 F.3d at 873. Moreover, the Supreme Court has made clear a preference for transfer rather than dismissal:

> The common-law doctrine of *forum non conveniens* "has continuing application [in federal courts] only in cases where the alternative forum is abroad," and perhaps in rare instances where a state or territorial court serves litigational convenience best. For the federal court system, Congress has codified the doctrine and has provided for transfer, rather than dismissal, when a sister federal court is the more convenient place for trial of the action.

Sinochen Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430 (2007) (internal citations omitted).

Nowhere do Defendants argue or concede that they are amenable to process in an alternative forum. Thus, they have not established the second of the four elements as set forth by the Court of Appeals for the Third Circuit. Kisano, 737 F.3d at 873 (holding that the second element for consideration is "the availability of an adequate alternative forum where defendants

are amenable to process and plaintiffs' claims are cognizable"). Without a concession of amenability to process in another forum, dismissal for *forum non conveniens* would be inappropriate; Defendants' motion to dismiss pursuant to that doctrine will be denied.

### B. 28 U.S.C. § 1404

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Defendant moves the Court to transfer this action to the United States District Court for the Southern District of Texas. Def.'s Br. in Support at ¶ 26.

Under Section 1404(a), the Court may consider:

> (1) Plaintiffs' forum preference as manifested in their original choice of venue; (2) Defendant's forum preference; (3) the extent to which Plaintiffs' claims arose outside the forum of choice; (4) the convenience of the parties, as indicated by their relative physical and financial conditions; (5) the convenience of the witnesses, to the extent that the witnesses may actually be unavailable for trial in one of the fora; (6) the location of books and records, but only to the extent that the relevant files cannot be produced in the alternative forum; (7) the enforceability of the judgment; (8) practical considerations that could make the trial easy, expeditious, or inexpensive; (9) the relative administrative difficulty in the two fora resulting from court congestion; (10) the local interest in deciding local controversies at home; (11) the public policies of the fora; and (12) the familiarity of the trial judge with the applicable state law in diversity cases.

Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-80 (3d Cir. 1995) (citations and internal quotations omitted).

A plaintiff's choice of forum (factor (1)) should not be lightly disturbed. Id. at 879. In balancing the private and public interests implicated in this case, the Court finds that convenience and fairness considerations weigh against transfer. See Rodgers v. Comcast Corp., 2014 WL 5364948 (E.D. Pa. 2014).

Defendants bear the burden of establishing the need for transfer. Jumara, 55 F.3d at 879. In their Brief in Support of their motion, Defendants make the following arguments for transfer:

14

1) the Court should give little to no deference to Plaintiff's choice of forum, as Plaintiff is not authorized to do business in Pennsylvania, and 2) relevant witnesses – along with books and records – are located in Texas and, therefore, may not be compelled to attend trial. The Court is not persuaded by the first argument. As previously explained, Plaintiff is authorized to do business in the Commonwealth of Pennsylvania. See supra at n. 2. Plaintiff's choice of forum, therefore, has weight before the Court. As to the second argument, the Court likewise is not persuaded, "as 'the time and expense of obtaining the presence of the testimony of foreign witnesses is greatly reduced by commonplace modes of communication and travel.'" Yager v. Starwood Hotels & Resorts Worldwide, Inc., 2013 WL 2414146, at *5 (E.D. Pa. 2013) (quoting ReidWalen v. Hansen, 933 F.2d 1390, 1397 (8th Cir. 1991)). As Defendants have not met their burden of establishing that the balance of convenience and fairness considerations favor transfer of this action to the Southern District of Texas, their motion to transfer venue will be denied.

\* \* \*

If the allegations in Plaintiff's Complaint are true, this Court finds the conduct cited most troubling. Such conduct smacks of fraud, deceit and other unethical transgressions rarely seen. Indeed, it should be noted that at various points during the course of the underlying litigation, the Court well recalls that Mr. Postel and his counsel represented *to the undersigned* that Mr. Postel did not have the funds to entertain settlement of Civil Action No. 11-1198. Defendants and their counsel are forewarned that if there is truth to this matter, the consequences here could be severe.

## II.  ORDER

For the reasons stated above, Defendants' Motion to Dismiss or, Alternatively, Transfer Venue (**Doc. 32**) is **DENIED.**

IT IS SO ORDERED.

May 14, 2015                                           s\Cathy Bissoon
                                                       Cathy Bissoon
                                                       United States District Judge

cc (via ECF email notification):

All Counsel of Record